# ORIGINAL

PETER D. KEISLER
Assistant Attorney General
EDWARD H. KUBO, JR.
United States Attorney
VINCENT M. GARVEY
Deputy Director
R. MICHAEL BURKE
Assistant United States Attorney
EDWARD H. WHITE (D.C. # 468531)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7107
Washington, D.C.  20530
Telephone.: (202) 514-5108
Facsimile: (202) 616-8470
Email: ned.white@usdoj.gov

Attorneys for Defendants

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 2 4 2004

at ___ o'clock and ___ min. ___M
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RELIGION OF JESUS CHURCH, THC MINISTRY, REVEREND ROGER CHRISTIE, REVEREND JAMES D. KIMMEL, TAMMY L. VANBUSKIRK, and JOHN DOE,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JOHN ASHCROFT, as U.S. Attorney General, KAREN TANDY, as Administrator of the U.S. Drug Enforcement Administration, EDWARD H. KUBO, JR., as U.S. Attorney for the District of Hawaii,<br><br>        Defendants. | CIV. NO. 04-00200 DAE-LEK<br><br>NOTICE OF MOTION; DEFENDANTS' MOTION TO DISMISS; TABLE OF CONTENTS; TABLE OF AUTHORITIES; MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS; EXHIBITS 1 THROUGH 4; CERTIFICATION RE: WORD COUNT; CERTIFICATE OF SERVICE<br>DATE:  Sept. 13, 2004<br>TIME:  10:30 a.m.<br>JUDGE: David Alan Ezra |

## NOTICE OF MOTION

TO:   MICHAEL A. GLENN, ESQ.
      1088 Bishop Street, Suite 703
      Honolulu, Hawaii 96813
      Attorney for Plaintiffs
      RELIGION OF JESUS CHURCH, *et al.*

PLEASE TAKE NOTICE that the undersigned will bring the following motion for hearing before the Honorable David Alan Ezra, United States District Judge, in his courtroom in the United States Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii on September 13, 2004 at 10:30 a.m. or as soon thereafter as counsel may be heard.

DATED: May 24, 2004, at Honolulu, Hawaii.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By: _____
    EDWARD H. WHITE
    Trial Attorney
    U.S. Department of Justice

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| RELIGION OF JESUS CHURCH, THC MINISTRY, REVEREND ROGER CHRISTIE, REVEREND JAMES D. KIMMEL, TAMMY L. VANBUSKIRK, and JOHN DOE,<br><br>   Plaintiffs,<br><br>    vs.<br><br>JOHN ASHCROFT, as U.S. Attorney General, KAREN TANDY, as Administrator of the U.S. Drug Enforcement Administration, EDWARD H. KUBO, JR.,as U.S. Attorney for the District of Hawaii,<br><br>   Defendants. | Case No. 04-CV-200 DAE/LEK<br><br><br>DEFENDANTS' MOTION TO DISMISS |

## **DEFENDANTS' MOTION TO DISMISS**

Pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, defendants John Ashcroft, Attorney General of the United States, Karen Tandy, Administrator of the United States Drug Enforcement Administration, and Edward Kubo, Jr., United States Attorney for the District of Hawaii, respectfully move this Court for an order dismissing this action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The grounds in support of this motion are set out more fully in the attached memorandum.

DATED:   May 24, 2004, at Honolulu, Hawaii.

Respectfully Submitted,

PETER D. KEISLER.
Assistant Attorney General

EDWARD H. KUBO, JR.
United States Attorney

VINCENT M. GARVEY
Deputy Director

EDWARD H. WHITE
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W.
Room 7107
Washington, D.C.  20530
Tel.: (202) 514-5108
Fax: (202) 616-8470
Email: ned.white@usdoj.gov

Attorneys for the Defendants.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RELIGION OF JESUS CHURCH, THC MINISTRY, REVEREND ROGER CHRISTIE, REVEREND JAMES D. KIMMEL, TAMMY L. VANBUSKIRK, and JOHN DOE,<br><br>            Plaintiffs,<br><br>      vs.<br><br>JOHN ASHCROFT, as U.S. Attorney General, KAREN TANDY, as Administrator of the U.S. Drug Enforcement Administration, EDWARD H. KUBO, JR.,as U.S. Attorney for the District of Hawaii,<br><br>          Defendants. | Case No. 04-CV-200 DAE/LEK<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 6

I.   PLAINTIFFS' CLAIM UNDER THE RELIGIOUS FREEDOM
     RESTORATION ACT MUST BE DISMISSED . . . . . . . . 6

     A.   Plaintiffs' "Beliefs" are not "Religious"
          Therefore RFRA Does Not Protect Their Conduct . . . . 6

     B.   The Government has a Compelling Interest to
          Prohibit Marijuana Cultivation, Possession,
          Consumption and Distribution and the CSA is
          the Least Restrictive Means of Furthering
          that Interest . . . . . . . . . . . . . . . . . 10

II.  PLAINTIFFS' CLAIM UNDER THE FIRST AMENDMENT
     MUST BE DISMISSED. . . . . . . . . . . . . . . . . 14

III. PLAINTIFFS' CLAIM UNDER THE TENTH AMENDMENT AND
     THE COMMERCE CLAUSE MUST BE DISMISSED . . . . . . . . 16

     A.   Legal Precedent Overwhelmingly Indicates
          that the Controlled Substances Act is a
          Lawful Exercise of Congressional Authority
          under the Commerce Clause . . . . . . . . . . . 17

     B.   The Controlled Substances Act Does Not
          Violate the Tenth Amendment . . . . . . . . . . 26

IV.  PLAINTIFFS' EQUAL PROTECTION CLAIMS MUST BE
     DISMISSED . . . . . . . . . . . . . . . . . . . . 27

     A.   Plaintiffs are Not Similarly Situated to
          Members of the Native American Church. . . . . . 28

     B.   Plaintiffs are Not Similarly Situated to
          Members of the UDV-USA Religion . . . . . . . . 31

     C.   Plaintiffs are Not Similarly Situated to
          the Plaintiffs in Raich v. Ashcroft. . . . . . . 34

D.   Plaintiffs are Not Similarly Situated to
     the Seven Remaining Participants in the
     Government's Discontinued Compassionate
     Use Program . . . . . . . . . . . . . . . . . . . . . . . . .  35

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

## TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

City of Indianapolis v. Edmond, 531 U.S. 32 (2000) . . . . . 11

Deaver v. Seymour, 822 F.2d 66 (D.C. Cir. 1987) . . . . . . . 6

Employment Division v. Smith, 494 U.S. 872 (1990) . . . . 12, 15

Gregory v. Ashcroft, 501 U.S. 452 (1991) . . . . . . . . . 27

Guam v. Guerrero, 290 F.3d 1210 (9th Cir. 2002) . . . . . . . 7

Hawkins v. Agricultural Mktg. Serv., Dep't of
    Agriculture, 10 F.3d 1125 (5th Cir. 1993) . . . . . . . 32, 34

Hodel v. Virginia Surface Mining & Reclamation
    Ass'n, Inc., 452 U.S. 264 (1981) . . . . . . . . . . . 26

Kuromiya v. United States, 78 F. Supp. 2d 367
    (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . 35, 36

Leary v. United States, 383 F.2d 851 (5th Cir. 1967),
    rev'd on other grounds, 395 U.S. 6 (1969) . . . . . . . 11, 14

Levitan v. Ashcroft, 281 F.3d 1313 (D.C. Cir. 2002) . . . . . 14

McBride v. Shawnee County, Kansas Court Servs.,
    71 F. Supp. 2d 1098 (D. Kansas 1999) . . . . . . . 28, 29, 31

Morton v. Mancari, 417 U.S. 535 (1974) . . . . . . . . . 30

New York Transit Auth. v. Beazer, 440 U.S. 568
    (1979) . . . . . . . . . . . . . . . . . . . . . . . . 6

New York v. United States, 505 U.S. 144 . . . . . . . . . . 26

O Centro Espirita Beneficiente Uniao Do Vegetal v.
    Ashcroft, 282 F. Supp. 2d 1236 (D.N.M. 2002) . . . . . . 15

O Centro Espirita Beneficiente Uniao Do Vegetal v.
    Ashcroft, 314 F.3d 463 (10th Cir. 2002) . . . . . . . . 32

O Centro Espirita Beneficiente Uniao Do Vegetal v.
    Ashcroft, 342 F.3d 1170 (10th Cir. 2003) . . . . . . . passim

Olsen v. Drug Enforcement Admin., 878 F.2d 1458
   (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . passim

Proyect v. United States, 101 F.3d 11 (2d Cir. 1996) . . . . 18

Raich v. Ashcroft, 352 F.3d 1222 (9th Cir. 2003),
   petition for cert. filed (April 20, 2004)
   (No. 03-1454) . . . . . . . . . . . . . . . . . . . . passim

Silveira v. Lockyer, 312 F.3d 1052 (9th Cir. 2003) . . . . . 27

Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134
   (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 6

Treasury Employees v. Von Raab, 489 U.S. 656 (1989) . . . . . 11

United States v. Bauer, 84 F.3d 1549 (9th Cir. 1996) . . . . 8

United States v. Bramble, 103 F.3d 1475 (9th Cir. 1996) . . . 18

United States v. Bramble, 894 F. Supp. 1384 (D. Haw.
   1995), aff'd, 103 F.3d 1475 (9th Cir. 1996) . . . . . . . 25

United States v. Brown , 276 F.3d 211 (6th Cir.),
   cert. denied, 535 U.S. 1079, 535 U.S. 1087 (2002) . . . . . 18

United States v. Edwards, 98 F.3d 1364 (D.C. Cir.
   1996), cert. denied, 520 U.S. 1170 (1997) . . . . . . . . 18

United States v. Greene, 892 F.2d 453 (6th Cir.
   1989) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

United States v. Israel, 317 F.3d 768 (7th Cir.
   2003) . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. Jackson, 111 F.3d 101 (11th Cir.),
   cert. denied, 522 U.S. 878 (1997) . . . . . . . . . . . . 19

United States v. Jefferson, 175 F. Supp. 2d 1123
   (N.D. Ind. 2001) . . . . . . . . . . . . . . . . . . 11, 13

United States v. Kim, 94 F.3d 1247 (9th Cir. 1996) . . . . . 18

United States v. Lerebours, 87 F.3d 582 (1st Cir.
   1996), cert. denied, 519 U.S. 1060 (1997) . . . . . . . . 18

United States v. Leshuk, 65 F.3d 1105 (4th Cir. 1995) . . . . 18

United States v. Lopez, 459 F.2d 949 (5th Cir.),
    cert. denied, 409 U.S. 878 (1972) . . . . . . . . . . . 18

United States v. Meyers, 906 F. Supp. 1494
    (D. Wyo. 1995) . . . . . . . . . . . . . . . . . . . . 8

United States v. Meyers, 95 F.3d 1475 (10th Cir.
    1996) . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. Middleton, 690 F.2d 820 (11th
    Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Montes-Zarate, 552 F.2d 1330
    (9th Cir. 1977), cert. denied, 435 U.S. 947 (1978) . . . . 18

United States v. Oakland Cannabis Buyers' Co-op,
    532 U.S. 483 (2001) . . . . . . . . . . . . . . . . . . 11

United States v. Orozco, 98 F.3d 105 (3d Cir. 1996) . . . . . 18

United States v. Palacio, 4 F.3d 150 (2d Cir. 1993) . . . 32, 34

United States v. Patterson, 140 F.3d 767 (8th Cir.),
    cert. denied, 525 U.S. 907 (1998) . . . . . . . . . . . 19

United States v. Price, 265 F.3d 1097 (10th Cir. 2001),
    cert. denied, 535 U.S. 1099 (2002) . . . . . . . . . . . 19

United States v. Rodriquez-Camacho, 468 F.2d 1220
    (9th Cir. 1972), cert. denied, 410 U.S. 985 (1973) . . 18, 24

United States v. Rush, 738 F.2d 497 (1st Cir. 1984) . . . passim

United States v. Tisor, 96 F.3d 370 (9th Cir. 1996),
    cert. denied, 519 U.S. 1140 (1997) . . . . . . . . . . 18, 24

United States v. Visman, 919 F.2d 1390 (9th Cir.
    1990), cert. denied, 502 U.S. 969 (1991) . . . . . 18, 23, 24

United States v. Westbrook, 125 F.3d 996 (7th Cir.),
    cert. denied, 522 U.S. 1036 (1997) . . . . . . . . . . . 18

Wisconsin v. Yoder, 406 U.S. 205 (1972) . . . . . . . . . . 10

## STATUTES

21 U.S.C. § 801, *et seq* . . . . . . . . . . . . . . . . . 1, 17

21 U.S.C. § 802 (8) . . . . . . . . . . . . . . . . . . . . 22

21 U.S.C. § 802 (11) . . . . . . . . . . . . . . . . . . . 22

21 U.S.C. §812(b)(1)(A)-(C) . . . . . . . . . . . . . . . . 11

42 U.S.C. § 1996a (2004) . . . . . . . . . . . . . . . . 28, 30

42 U.S.C. § 2000bb . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. § 2000bb-1 . . . . . . . . . . . . . . . . . . . 1, 7

Haw. Rev. Stat. § 329-122. . . . . . . . . . . . . . . . . 5

## UNITED STATES CONSTITUTION

First Amendment . . . . . . . . . . . . . . . . . . . . 14, 15

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . 1

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . 1

Tenth Amendment . . . . . . . . . . . . . . . . . . . . . *passim*

## RULES AND REGULATIONS

21 C.F.R. §1307.31 (2004) . . . . . . . . . . . . . . . . 28

## MISCELLANEOUS

Encyclopedia of American Religions (J. Gordon Melton,
    6th ed. 1999) . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION

Plaintiffs ask this federal court to declare that they can grow, smoke, and distribute marijuana with impunity, and seek an injunction prohibiting Defendants from enforcing the provisions of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.*, against them.  Plaintiffs claim that they are entitled to this blanket protection because their cultivation, possession, consumption, and distribution of marijuana is done "religiously" and/or "therapeutically" for medical purposes.  In these circumstances, Plaintiffs contend that Congress's restrictions on marijuana (1) violate the terms of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1; (2) infringe on their rights to freely exercise their religion under the First Amendment; (3) exceed Congress's authority under the Commerce Clause, thus infringing on principles of state sovereignty in violation of the Tenth Amendment; and (4) violate their rights under the Equal Protection clauses of the Fifth and Fourteenth Amendments.

For the reasons discussed below, Plaintiffs are not legally entitled to the relief requested under any of their theories, and their claims must be dismissed.  The Plaintiffs' claims under RFRA and the First Amendment necessarily fail because they cannot establish that their beliefs are "religious" as required to invoke these statutory and constitutional protections.  Moreover, courts have consistently found that the CSA's prohibition of

marijuana cultivation, possession, consumption, and distribution passes the heightened scrutiny demanded by RFRA in that such prohibition is the least restrictive means of serving a compelling governmental interest.

Nearly every court presented with the argument that the CSA's restrictions on marijuana exceed Congress's authority under the Commerce Clause has resoundingly rejected it.  Only the Ninth Circuit's recent decision in Raich v. Ashcroft, 352 F.3d 1222 (9th Cir. 2003), petition for cert. filed, (April 20, 2004) (No. 03-1454) finds that the CSA, as applied, exceeded Congress's power under the Commerce Clause.  The claimed "religious" nature of the Plaintiffs' activities involving marijuana and their *distribution* of marijuana, however, distinguish their conduct from the Raich plaintiffs.  Accordingly, the overwhelming weight of authority indicates that the CSA, as applied to the Plaintiffs' cultivation, possession, consumption, and distribution of marijuana in this case, is a valid exercise of Congress's power under the Commerce Clause and thus does not violate the Tenth Amendment.

Finally, Plaintiffs' theory that the CSA as applied to them violates their Equal Protection rights also fails as a matter of law.  Plaintiffs are not similarly situated to members of the Native American Church or members of the UDV-USA religion. Marijuana is different from peyote and different from hoasca-the

-2-

substance used by the UDV-USA religion, and courts have consistently rejected similar Equal Protection claims.  As mentioned above, Plaintiffs in this case also are not similarly situated to the plaintiffs involved in the <u>Raich</u> case.  Unlike the Plaintiffs here, who assert that they cultivate, consume, and distribute marijuana for "religious" purposes, the plaintiffs in <u>Raich</u> alleged that they were engaged in the noncommercial cultivation and possession of marijuana for purportedly medicinal purposes and were found not to have exchanged, sold, or distributed marijuana.  The Plaintiffs also differ from the seven remaining members of the discontinued federal marijuana research program, because they were never selected as participants; thus none of Plaintiffs' Equal Protection theories merits relief.

<b><u>BACKGROUND</u></b>

Two of the six plaintiffs in this case, the Religion of Jesus Church and the THC Ministry, are local Hawaii chapters of alleged religious organizations that assertedly mandate their members to consume marijuana as part of their religious practice. The other four plaintiffs, Reverend Roger Christie, Reverend James Kimmel, Tammy Vanbuskirk, and John Doe, are individual members of these alleged religious organizations and, as such, they each "consume, possess, cultivate and/or distribute" marijuana as directed by their religion.  Compl. ¶¶ 15-16.

-3-

Plaintiff "Reverend" Roger Christie is the founder of the THC Ministry, whose motto, according to his website, www.thc-ministry.org, is "We Use Cannabis Religiously and You Can, Too." (Exhibit 1 at p. 1).  To provide marijuana growers, smokers, and distributors with purported protection against prosecution, Mr. Christie offers a "Cannabis Sanctuary Kit" for a "suggested donation" of $250.  (Exhibit 2 at p. 1).  The kit includes wallet-sized membership I.D. cards, a THC Ministry affidavit, two Sanctuary signs for the home and garden, "Sacrament/Plant tags for your stash bag and plants," and a 30 page binder containing legal precedents and a history of Christie's "religious" credentials.  (Exhibit 2 at pp. 1-2).  Reverend Christie assures his customers that merely "[r]eceiving the kit demonstrates that you are a practitioner of The Hawai'i Cannabis (THC) Ministry. Being a member of The Hawai'i Cannabis (THC) Ministry allows you to cultivate and use cannabis for your holy sacrament. **Click on the PayPal Donate Button to get the entire kit now**." (Exhibit 2 at p. 2) (emphasis in original).  The THC Ministry identification card is described as "This is your 'Stay out of jail free' card." (Exhibit 2 at p. 3).  The website indicates that "The THC Ministry began in September of 2000 and has provided cannabis Sanctuary paperwork to thousands of people who use it successfully." (Exhibit 1 at p. 4).  The contents of the THC Ministry website belie the claimed "religious" nature of this

organization and indicate that its chief purpose is to commercially distribute assorted materials designed to protect marijuana cultivation, consumption, and distribution generally under the cloak of religion.

In addition to using marijuana "religiously," plaintiffs Tammy Vanbuskirk and John Doe are also allegedly licensed and registered under the State of Hawaii's medical marijuana law, which permits the medical use of marijuana by a qualifying patient who has been diagnosed by a physician as having a debilitating medical condition. Haw. Rev. Stat. § 329-122. Plaintiff Vanbuskirk is registered as a "patient" under Hawaii's law, and she cultivates, possesses, and consumes marijuana for medical purposes as well as for her "religious" purposes.  Compl. ¶¶ 5, 15, 17.  Plaintiff John Doe is alleged to be registered as a "caregiver" under Hawaii's law, and he cultivates, possesses, and distributes marijuana to a registered patient for medical purposes in addition to his "religious" involvement with marijuana as a founding member of the THC Ministry.  Compl. ¶¶ 6, 18.

Plaintiff "Reverend" James Kimmel, like his co-plaintiff "Reverend" Roger Christie, is allegedly required by his religion not only to cultivate and consume marijuana but also to *distribute* marijuana to other members as part of their religious ceremonies.  Compl. ¶¶ 3, 4, 16, 20.  As mentioned above,

plaintiff John Doe also *distributes* marijuana in accordance with his purported religious beliefs and as a caregiver under Hawaii's medical marijuana law.  Compl. ¶¶ 6, 15, 18.

Plaintiffs filed this complaint seeking declaratory and injunctive relief to prevent any potential enforcement of the CSA against them, alleging that such enforcement would violate their statutory and constitutional rights.[1]

### ARGUMENT

**I.  PLAINTIFFS' CLAIM UNDER THE RELIGIOUS FREEDOM RESTORATION ACT MUST BE DISMISSED.**

**A.  Plaintiffs' "Beliefs" are not "Religious" Therefore RFRA Does Not Protect Their Conduct.**

Under the Religious Freedom Restoration Act, the federal

---

[1] Initially, we note that none of the Plaintiffs is currently under investigation or being prosecuted for a violation of the Controlled Substances Act and question whether the Plaintiffs' claims are ripe for judicial review.  See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134 (9th Cir. 2000) (finding that a pre-enforcement challenge to a statute and ordinance prohibiting marital status discrimination in rental decisions not ripe for review).  The ripeness argument is even stronger with respect to the claims of those Plaintiffs who allege to use marijuana for personal medical purposes in light of the Ninth Circuit's decision in Raich v. Ashcroft, 352 F.3d 1222 (9th Cir. 2003), petition for cert. filed, (April 20, 2004) (No. 03-1454).

The Supreme Court has emphasized that constitutional issues should not be decided "in advance of the necessity of deciding them."  New York Transit Auth. v. Beazer, 440 U.S. 568, 582 n.22 (1979).  If any of the Plaintiffs were to be indicted, Rule 12(b)(1) of the Federal Rules of Criminal Procedure permits a defendant to raise by motion, after indictment but before trial, a constitutional challenge to his or her prosecution.  See Deaver v. Seymour, 822 F.2d 66, 69-71 (D.C. Cir. 1987).

government may not implement a policy that substantially burdens a person's exercise of religion unless it can demonstrate that the policy furthers a compelling governmental interest and is the least restrictive means of furthering that interest.   42 U.S.C. § 2000bb-1 (2004).   In order to present a prima facie case under RFRA, a plaintiff must establish, by a preponderance of the evidence, that the governmental action being challenged (1) substantially burdens (2) a religious belief (not merely a philosophy or a way of life) that the plaintiff (3) sincerely holds.   See Guam v. Guerrero, 290 F.3d 1210, 1222 (9th Cir. 2002); United States v. Meyers, 95 F.3d 1475, 1482 (10th Cir. 1996).

As a threshold matter, the Plaintiffs' claim under RFRA fails because they cannot establish that their cultivation, consumption, and distribution of marijuana is done pursuant to an actual religious belief.   Much like the Plaintiffs in the present case, in Meyers, the defendant asserted that his marijuana convictions violated his religious rights under RFRA and the First Amendment because he was the founder and adherent of the Church of Marijuana, which commanded him to "use, possess, grow, and distribute marijuana for the good of mankind and the planet earth."   Meyers, 95 F.3d at 1479.   The Tenth Circuit rejected Meyers' claim and concluded that his beliefs "more accurately espouse[d] a philosophy and/or a way of life rather than a

-7-

'religion'."  Id. at 1484.[2]  In reaching this conclusion, the
court considered numerous criteria from prior case law for
determining whether a set of beliefs is religious in nature,
including: the presence of a moral or ethical system, having a
founder claimed to be a prophet or divine in nature, the use of
sacred gathering places, and the presence of a hierarchical
organization.  Id. at 1483-84.

Plaintiffs make no assertion that the Religion of Jesus
Church or the THC Ministry share these or similar
characteristics.  Moreover, neither the Religion of Jesus Church
nor the THC Ministry is mentioned in scholarly religious journals
or the Encyclopedia of American Religions (J. Gordon Melton, 6th
ed. 1999), which the Ninth Circuit has previously relied on to
determine the legitimacy of a claimed religion.  See United
States v. Bauer, 84 F.3d 1549, 1556 (9th Cir. 1996) (finding
Rastafarianism listed among the 1558 groups in the Encyclopedia).

Most tellingly, the THC Ministry's website impugns the
legitimacy of Plaintiffs' alleged "religious" mission.  The
website prominently advertises its "Cannabis Sanctuary Kit" which
can be purchased for $250 and includes various official-looking
cards, signs, and papers designed to thwart a potential arrest

---

[2] The district court similarly concluded that "Meyers'
professed beliefs have an ad hoc quality that neatly justify his
desire to smoke marijuana."  United States v. Meyers, 906 F.
Supp. 1494, 1509 (D. Wyo. 1995).

and prosecution "for those of us who enjoy cannabis"--
religiously or otherwise.  (Exhibit 1 at p. 2; Exhibit 2).
Membership in the THC Ministry is not limited to people who use
marijuana religiously.  Instead, Reverend Christie proclaims that
"the THC-Ministry might be for you" if you would simply "like to
be free of legal problems associated with cannabis for the rest
of your life" or if you would "like identification that will help
to protect you from arrest, prosecution and conviction of
cannabis charges."  (Exhibit 1 at pp. 1-2).  The website's
testimonials do not praise the THC Ministry for any religious
conversion, but rather commend the Ministry's purported ability
to thwart any criminal liability for their members' use and
distribution of marijuana.  One testimonial reads, "'My lawyer
told me that if we didn't have Roger's help, we wouldn't have a
leg to stand on.' -Arizona man arrested with a pound of
marijuana."  (Exhibit 2 at p. 2).

To join the Ministry one simply needs to fill in the contact
information and click "Join(t) Now!" (Exhibit 3 at p. 1).  There
are no religious education requirements, no vows or oaths, and no
confirmation ceremonies - just a click of the mouse (and a
"suggested donation" of $250 for the Cannabis Sanctuary Kit).  By
its own admission, THC Ministry's website reveals that the group
is, at most, a contrived attempt to circumvent the Controlled
Substances Act under a cloak of asserted "religion" and a money-

-9-

making venture for its founder.  Accordingly, Plaintiffs are not
adherents to a genuine religion and their claim under RFRA must
fail.[3]

> **B.    The Government has a Compelling Interest to Prohibit
> Marijuana Cultivation, Possession, Consumption and
> Distribution and the CSA is the Least Restrictive Means
> of Furthering that Interest.**

Even were the Court to find that Plaintiffs' purported
beliefs constituted a genuine religion and that a prima facie
violation of RFRA were established, Plaintiffs' RFRA claim
nonetheless must be dismissed because courts have universally
found that the Controlled Substances Act is the least restrictive
means of serving a compelling governmental interest, thus
satisfying the statutory requirements of RFRA.

Protecting the public from threats to health, safety, and
welfare has consistently been recognized as a compelling
governmental interest.  See, e.g., Wisconsin v. Yoder, 406 U.S.
205, 220 (1972) (finding that religiously based activities may be
subject to regulation under the government's "undoubted power to
promote health, safety, and general welfare.").  The Supreme
Court has acknowledged that the use of and trafficking in
controlled substances "creates social harms of the first

_____

[3] The contents of the THC Ministry website also call into
doubt the sincerity of the Plaintiffs' beliefs.  Plaintiffs
appear to be sincere only about collecting $250 for each Cannabis
Sanctuary Kit they distribute.

magnitude," <u>City of Indianapolis v. Edmond</u>, 531 U.S. 32, 42

(2000), and that drug abuse is "one of the most serious problems

confronting our society today." <u>Treasury Employees v. Von Raab</u>,

489 U.S. 656, 674 (1989).

Here, Congress has placed marijuana in Schedule I of the

CSA, the most restrictive schedule which represents a factual

finding that marijuana "has a high potential for abuse," "has no

currently accepted medical use," and has "a lack of accepted

safety for use . . . under medical supervision." 21 U.S.C. §

812(b)(1)(A)-(C); <u>see also</u> <u>United States v. Oakland Cannabis</u>

<u>Buyers' Co-op</u>, 532 U.S. 483, 492-93 (2001). Courts should afford

great deference to Congress's classification scheme in the CSA.

<u>United States v. Rush</u>, 738 F.2d 497, 512-13 (1st Cir. 1984).

Based on its status as a Schedule I controlled substance,

the federal courts have uniformly recognized that the government

has a compelling interest in prohibiting marijuana cultivation,

possession, consumption, and distribution under the CSA. <u>See</u>

<u>United States v. Israel</u>, 317 F.3d 768, 772 (7th Cir. 2003);

<u>United States v. Greene</u>, 892 F.2d 453, 456-57 (6th Cir. 1989);

<u>Olsen v. Drug Enforcement Admin.</u>, 878 F.2d 1458, 1462 (D.C. Cir.

1989); <u>United States v. Rush</u>, 738 F.2d 497, 512-13 (1st Cir.

1984); <u>United States v. Middleton</u>, 690 F.2d 820, 825 (11th Cir.

1982); <u>Leary v. United States</u>, 383 F.2d 851, 861 (5th Cir. 1967),

<u>rev'd on other grounds</u>, 395 U.S. 6 (1969); <u>United States v.</u>

- 11 -

<u>Jefferson</u>, 175 F. Supp.2d 1123, 1130 (N.D. Ind. 2001).[4]

In <u>Israel</u>, for example, a Rastafarian asserted that the revocation of his supervised release due to his continual use of marijuana violated his religious rights under RFRA.   The Seventh Circuit rejected the defendant's RFRA defense and found that "[t]here is substantial authority to support the conclusion that even under [the compelling interest test of RFRA,] courts have properly refused to allow exceptions for marijuana use."   <u>Israel</u>, 317 F.3d at 772.

Moreover, in <u>Rush</u>, the defendants were charged with possession of marijuana with intent to distribute.   As members of the Ethiopian Zion Coptic Church, they asserted that their religion mandated their use of marijuana and should be protected by the First Amendment.   The First Circuit "decline[d] to second-guess the unanimous precedent establishing an overriding governmental interest in regulating marijuana" and upheld the district court's determination that defendants' First Amendment defense was invalid as a matter of law.   <u>Rush</u>, 738 F.2d at 512-13.   Similarly, in <u>United States v. Greene</u>, 892 F.2d 453, 456-57

---

[4] Some of the cited cases pre-date the Supreme Court's decision in <u>Employment Division v. Smith</u>, 494 U.S. 872 (1990), which prompted the enactment of RFRA.   <u>See</u> 42 U.S.C. § 2000bb. Their analyses under the First Amendment is nevertheless applicable under RFRA given that RFRA intended to restore the pre-<u>Smith</u> compelling governmental interest test in determining whether one's exercise of religion is substantially burdened. <u>See</u> <u>id.</u>

(6th Cir. 1989), the Sixth Circuit noted that "[e]very federal court that has considered this issue has accepted Congress' determination that marijuana poses a real threat to individual health and social welfare and has upheld criminal penalties for possession and distribution even where such penalties may infringe to some extent on the free exercise of religion."  In light of the overwhelming authority, it is indisputable that the government has compelling interest in regulating marijuana.

The case law also indicates that the CSA's prohibition on marijuana possession and distribution is the least restrictive means of serving the government's compelling interest in protecting the public's health and safety.  Courts have recognized that proposals to allow limited use of controlled substances by particular individuals or groups for religious purposes are inappropriate because they would require "burdensome and constant official supervision and management." Olsen, 878 F.2d at 1462; see also Israel, 317 F.3d at 772 (finding that "[a]ny judicial attempt to carve out a religious exemption in this situation would lead to significant administrative problems for the probation office and open the door to a weed-like proliferation of claims for religious exemptions."); Jefferson, 175 F. Supp.2d at 1132 (same).  Uneven enforcement of the marijuana laws would be difficult, if not impossible, to accomplish.  As the Fifth Circuit explained, "[i]t would be

- 13 -

difficult to imagine the harm which would result if the criminal statutes against marihuana were nullified as to those who claim the right to possess and traffic in this drug for religious purposes.  For all practical purposes the anti-marihuana laws would be meaningless, and enforcement impossible."  <u>Leary</u>, 383 F.2d at 861.

Uniform enforcement of the federal marijuana laws is the least restrictive means of furthering a compelling interest – even if those laws prohibit marijuana for religious purposes. Accordingly, the Plaintiffs' claim under RFRA fails.

## II.  PLAINTIFFS' CLAIM UNDER THE FIRST AMENDMENT MUST BE DISMISSED.

Plaintiffs' claim that the CSA violates their right to freely exercise their religion under the First Amendment fails for the same reasons that their RFRA claim fails.  First, like RFRA, the First Amendment's free exercise clause pertains only to beliefs and practices that are religious in nature.  U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."); <u>Levitan v. Ashcroft</u>, 281 F.3d 1313, 1320 (D.C. Cir. 2002) (finding that a prima facie case under the First Amendment's free exercise clause requires the practices at issue to be of a religious nature).  As discussed in detail above, the so-called "Religion of Jesus Church" and the so-called "THC Ministry" do not have the characteristics of bona fide religions, and the

- 14 -

Plaintiffs' marijuana activities are thus not genuinely religious in nature.  As a result, the First Amendment offers no protection for their secular conduct involving marijuana.

Second, because the government has a compelling interest in prohibiting the Plaintiffs' cultivation, consumption, and distribution of marijuana that is being furthered by the least restrictive means, as previously demonstrated, the CSA's prohibitions against Plaintiffs' marijuana activities would survive even heightened scrutiny under the First Amendment. However, the correct First Amendment analysis in this case would not even reach the level of heightened scrutiny.  Under well-established First Amendment jurisprudence, a neutral law of general applicability may be applied to religiously motivated conduct without compelling justification.  See Employment Div. Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 883 (1990).  Several courts have determined that the CSA is a neutral law of general applicability.  See United States v. Meyers, 95 F.3d 1475, 1481 (10th Cir. 1996); O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 282 F. Supp.2d 1236, 1246 (D.N.M. 2002) (finding the CSA a neutral law of general applicability despite its various exceptions for research and other uses).  In Meyers, the Tenth Circuit rejected a "Church of Marijuana" member's First Amendment challenge to the CSA's ban on marijuana, explaining:

- 15 -

Meyers' challenge to his convictions under the Free
Exercise Clause must fail.  First, as in *Smith*, Meyers
challenges the application of valid and neutral laws of
general applicability on the grounds that they prohibit
conduct that is required by his religion.  Therefore,
we hold that Meyers' challenge fails for the same
reasons as the respondents challenge in *Smith* failed,
i.e., the right to free exercise of religion under the
Free Exercise Clause of the First Amendment does not
relieve an individual of the obligation to comply with
a valid and neutral law of general applicability on the
ground that the law incidentally affects religious
practice.  Second, we hold that when, as here, the
challenge is to a valid neutral law of general
applicability, the law need not be justified by a
compelling governmental interest.

Meyers, 95 F.3d at 1481.  In sum, when applied to neutral laws of

general applicability, such as the CSA, the First Amendment

provides even less protection of the Plaintiffs' marijuana

activities than the statutory standards of RFRA.  Accordingly,

given that the CSA's prohibitions against marijuana have

consistently been found to be the least restrictive means of

furthering a compelling government interest, thus satisfying the

heightened scrutiny statutorily imposed by RFRA,  they

necessarily pass muster under the lower scrutiny afforded by the

First Amendment.  As a result, Plaintiffs' First Amendment claim

fails as a matter of law and must be dismissed.

## III. PLAINTIFFS' CLAIM UNDER THE TENTH AMENDMENT AND THE COMMERCE CLAUSE MUST BE DISMISSED.

Plaintiffs next assert that their cultivation, possession,

consumption, and distribution of marijuana for religious and/or

medical purposes occurs completely within the state of Hawaii

and, as a result, the enforcement of the CSA against their intrastate marijuana activities would exceed Congress's authority under the Commerce Clause, thus abrogating the powers reserved to the State of Hawaii in violation of the Tenth Amendment.  Compl. ¶¶ 38-44.  Both claims are insubstantial.

**A.   Legal Precedent Overwhelmingly Indicates that the Controlled Substances Act is a Lawful Exercise of Congressional Authority under the Commerce Clause.**

In enacting the Controlled Substances Act, Congress explicitly found that intrastate cultivation, possession, and distribution of controlled substances affects interstate commerce.  Congress determined that "[i]ncidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce" and that the "[l]ocal distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances."  21 U.S.C. §§ 801(3)-(4).  Congress also found that "[c]ontrolled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate," and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. §§ 801(5)-(6).

Based in part on these findings, the Ninth Circuit has repeatedly determined that the CSA's prohibition on the cultivation, possession, and distribution of marijuana and other controlled substances, including its application to wholly intrastate drug activities, "is constitutional under the Commerce Clause." United States v. Bramble, 103 F.3d 1475, 1479 (9th Cir. 1996); accord United States v. Tisor, 96 F.3d 370, 373-75 (9th Cir. 1996), cert. denied, 519 U.S. 1140 (1997); United States v. Kim, 94 F.3d 1247, 1249-50 (9th Cir. 1996); United States v. Visman, 919 F.2d 1390, 1393 (9th Cir. 1990), cert. denied, 502 U.S. 969 (1991); United States v. Montes-Zarate, 552 F.2d 1330, 1331-32 (9th Cir. 1977), cert. denied, 435 U.S. 947 (1978); United States v. Rodriquez-Camacho, 468 F.2d 1220, 1221-22 (9th Cir. 1972), cert. denied, 410 U.S. 985 (1973).  The Ninth Circuit is far from alone in reaching this conclusion; all eleven other circuit courts of appeals have likewise upheld the constitutionality of section 841(a)(1) or other provisions of the CSA against Commerce Clause challenges.[5]

_____

[5] See, e.g., United States v. Edwards, 98 F.3d 1364, 1369 (D.C. Cir. 1996), cert. denied, 520 U.S. 1170 (1997); United States v. Lerebours, 87 F.3d 582, 584-85 (1st Cir. 1996), cert. denied, 519 U.S. 1060 (1997); Proyect v. United States, 101 F.3d 11, 13-14 (2d Cir. 1996) (per curiam); United States v. Orozco, 98 F.3d 105, 107 (3d Cir. 1996); United States v. Leshuk, 65 F.3d 1105, 1111-12 (4th Cir. 1995); United States v. Lopez, 459 F.2d 949, 953 (5th Cir.), cert. denied, 409 U.S. 878 (1972); United States v. Brown , 276 F.3d 211, 214-15 (6th Cir.), cert. denied, 535 U.S. 1079, 535 U.S. 1087 (2002); United States v. Westbrook, 125 F.3d 996, 1009-10 (7th Cir.), cert. denied, 522 U.S. 1036

To be sure, in <u>Raich v. Ashcroft</u>, 352 F.3d 1222 (9th Cir. 2003), the Ninth Circuit recently held that the CSA, in certain unique circumstances, might exceed Congress's Commerce Clause authority.  As demonstrated below, however, the Plaintiffs' conduct here is distinguishable from the facts in <u>Raich</u>.  Thus, their case is governed instead by the vast majority of cases upholding the CSA as a valid exercise of Congress's power under the Commerce Clause.

In <u>Raich</u>, a panel majority of the Ninth Circuit found that the plaintiffs demonstrated a likelihood of success on the merits of their claim that the CSA, as applied to certain California medical marijuana participants, exceeded Congress's Commerce Clause authority, and the court remanded the case for entry of a preliminary injunction.  The court's conclusion rested on its determination that the class of activities at issue was limited to the "intrastate, noncommercial cultivation, possession and use of marijuana for personal medical purposes on the advice of a physician," and did not involve the "sale, exchange, or distribution" of marijuana.  352 F.3d at 1229.[6]  The court

_____

(1997); <u>United States v. Patterson</u>, 140 F.3d 767, 772 (8th Cir.), <u>cert. denied</u>, 525 U.S. 907 (1998); <u>United States v. Price</u>, 265 F.3d 1097, 1106-07 (10th Cir. 2001), <u>cert. denied</u>, 535 U.S. 1099 (2002); <u>United States v. Jackson</u>, 111 F.3d 101, 102 (11th Cir.) (per curiam), <u>cert. denied</u>, 522 U.S. 878 (1997).

[6] We believe that <u>Raich</u> was wrongly decided.  On April 20, 2004, the Solicitor General petitioned the Supreme Court for a writ of certiorari to review that decision.

explained, "[a]s applied to the *limited* class of activities
presented by this case, the CSA does not regulate commerce or any
sort of economic enterprise.  The cultivation, possession, and
use of marijuana for medicinal purposes *and not for exchange or
distribution* is not properly characterized as commercial or
economic activity."  Id. (emphasis added).  The court also
emphasized that "this limited use is clearly distinct from the
broader illicit drug market—as well as any broader commercial
market for medicinal marijuana—insofar as the medicinal marijuana
in this case is not intended for, nor does it enter, the stream
of commerce."  Id.  In other words, "[l]acking sale, exchange, or
distribution, the activity does not possess the essential
elements of commerce."  Id. at 1229-30.

       In contrast to the "limited class of activities" at issue in
Raich, the Plaintiffs' activities in the present case are not
limited to the "noncommercial cultivation, possession, and use of
marijuana for personal medical purposes" but rather do involve
the "sale, exchange or distribution" of marijuana in conjunction
with their allegedly "religious" practices.  According to the
allegations in the complaint, several of the Plaintiffs provide
and deliver marijuana to other Plaintiffs and members of their
"church"  who acquire and receive marijuana as part of their so-
called "communion" ceremonies.  Compl. ¶¶ 15-16.  The Religion of
Jesus Church and the THC Ministry sponsor the distribution of

- 20 -

marijuana given that their tenets allegedly demand that "church members must receive communion through cannabis in their religious ceremonies" and that reverends distribute the marijuana as part of their ministry.  Compl. ¶¶ 1-4, 15-16, 20.  Plaintiffs Reverend Roger Christie and Reverend James D. Kimmel *distribute* marijuana to other church members in administering "communion" and in utilizing "the Holy Anointing Oil, which requires large quantities of cannabis."  Compl. ¶ 3; see also Compl. ¶ 4 (indicating that Reverend Kimmel "is required by his religion to consume, cultivate and *distribute* cannabis") (emphasis added); Compl. ¶¶ 15-16, 20.  As a founding member of the THC Ministry, Plaintiff John Doe presumably distributes marijuana to church members in administering so-called communion and/or receives marijuana as part of the sacrament.  Compl. ¶¶ 6, 15-16.  John Doe is also alleged to be involved with marijuana medically as a registered  caregiver, but he specifically *distributes* marijuana in that capacity.  Compl. ¶¶ 6, 18.  While Plaintiff Tammy Vanbuskirk is registered as a patient under Hawaii's medical marijuana law, she also acquires and receives marijuana that is distributed by church reverends as part of her purported religious obligation to consume marijuana in the "communion" ceremony.  Compl. ¶¶ 15-17.  Vanbuskirk's "religious" possession and consumption of marijuana thus distinguishes her conduct from the <u>Raich</u> plaintiffs, who used marijuana solely for personal

medical purposes.

The provision and delivery of marijuana to church members by several of the Plaintiffs, including Reverends Christie, Kimmel, and John Doe, and the acquisition and receipt of marijuana by church members, including Vanbuskirk and John Doe, during the so-called "communion" ritual plainly meets the definition of "distribution" under the Controlled Substances Act. See 21 U.S.C. § 802 (11) (defining the term "distribute" to mean "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical."); 21 U.S.C. § 802 (8) (defining the terms "deliver" or "delivery" to mean "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship."). Accordingly, because Plaintiffs are engaged in the *distribution and exchange* of marijuana in conjunction with their "religious" practices, the Ninth Circuit's decision in Raich does not control the outcome of this case, and the Plaintiffs' claim should be dismissed.

The commercial nature of the Plaintiffs' "religious" activities also distinguishes this case from Raich. As discussed above, the THC Ministry commercially solicits new members through its website, which affects not only interstate commerce but worldwide commerce. (Exhibit 1). The THC Ministry also advertises its "Cannabis Sanctuary Kit" for sale for $250 and

commercially distributes these materials throughout the country.
(Exhibit 2) (indicating that a patron may "[c]lick on the PayPal
Donate Button to get the entire kit now."). Every new self-
proclaimed "believer" who joins the THC Ministry simply by
clicking a weblink, thus becomes another person who believes he
or she may grow, smoke, and *distribute* marijuana with impunity,
resulting in a vast proliferation of marijuana distribution
across the country and the world.  The THC Ministry already has
local chapters in several states and countries. (Exhibit 4).  As
members of the THC Ministry, the individual plaintiffs,
especially Roger Christie, who is featured on the website, are
all affiliated with its practices.  Accordingly, Plaintiffs'
"religious" activities, including their cultivation, consumption,
and *distribution* of marijuana, have a sufficient nexus to
interstate commerce to warrant application of the CSA.

As mentioned above, the Ninth Circuit has repeatedly found
that the CSA constitutionally applies to drug distribution
activities comparable to the Plaintiffs' conduct in this case.
In United States v. Visman, 919 F.2d 1390 (9th Cir. 1990), the
Ninth Circuit upheld the defendant's convictions under the CSA
for manufacture and distribution of marijuana, despite the
intrastate nature of his activities, concluding:

> We hold that Congress may constitutionally regulate
> intrastate criminal cultivation of marijuana plants
> found rooted in the soil.  We defer to Congress'
> findings that controlled substances have a detrimental

- 23 -

> effect on the health and general welfare of the
> American people and that intrastate drug activity
> affects interstate commerce.  We further hold that
> local criminal cultivation of marijuana is within a
> class of activities that adversely affects interstate
> commerce.

919 F.2d at 1393 (internal citations omitted).  In United States

v. Tisor, 96 F.3d 370, 375 (9th Cir. 1996), the Ninth Circuit

upheld the defendant's conviction for distribution of

methamphetamine in the face of a Commerce Clause challenge and

reiterated that "[i]ntrastate distribution and sale of

[controlled substances] are commercial activities" that "are part

of a wider regulatory scheme criminalizing interstate and

intrastate commerce in drugs."  Similarly, in United States v.

Rodriquez-Camacho, 468 F.2d 1220, 1221-22 (9th Cir. 1972), the

Ninth Circuit found that "Congress had a rational basis for

making its findings" under the CSA and concluded that defendant's

conviction for possession of marijuana with the intent to

distribute was valid under Congress's authority to regulate

"wholly intrastate activities which it concludes have an effect

upon interstate commerce."

Although the panel majority in Raich determined that

application of the CSA to intrastate *cultivation* and *possession*

of marijuana for *personal medical purposes* likely violates the

Commerce Clause, this Court and the Ninth Circuit have otherwise

held that application of the CSA to intrastate *cultivation* and

*possession* of marijuana for other purposes (separate and apart

from any distribution) is constitutional under the Commerce Clause. See United States v. Bramble, 894 F. Supp. 1384 (D. Haw. 1995), aff'd, 103 F.3d 1475 (9th Cir. 1996). In Bramble, this Court rejected a Commerce Clause challenge to the prosecution of a defendant under the CSA for simple intrastate possession and manufacture of marijuana where no distribution was involved. 894 F. Supp. at 1395. Accordingly, even if the Plaintiffs' marijuana activities do not qualify as "distribution," the CSA would nevertheless constitutionally apply to the marijuana cultivation and possession that the Plaintiffs perform for non-medical purposes.

As discussed above, all of the Plaintiffs cultivate and possess marijuana for their purported "religious" purposes. See Compl. ¶¶ 15-16. Only Plaintiffs Tammy Vanbuskirk and John Doe are alleged to also cultivate, possess, and/or distribute marijuana for medical purposes as registered patients or caregivers under Hawaii's medical marijuana program, in addition to their religious activities involving marijuana. Id. at ¶¶ 5-6, 15, 17-18. As a result, even in light of Raich, the CSA may constitutionally be applied to the four plaintiffs who cultivate and possess marijuana for non-medical "religious" purposes. And because Vanbuskirk and Doe have not differentiated their "medical" cultivation and possession of marijuana from their "religious" cultivation and possession, their marijuana

- 25 -

activities in their entirety may also be constitutionally
prohibited under the CSA.

**B.  The Controlled Substances Act Does Not Violate the
Tenth Amendment.**

As illustrated above, applying the CSA to the Plaintiffs'
marijuana activities would be a valid exercise of Congressional
power under the Commerce Clause.  As a result, the CSA
necessarily does not infringe on any authority reserved to the
States under the Tenth Amendment.

The Supreme Court "long ago rejected the suggestion that
Congress invades areas reserved to the States by the Tenth
Amendment simply because it exercises its authority under the
Commerce Clause in a manner that displaces the States' exercise
of their police powers."  Hodel v. Virginia Surface Mining &
Reclamation Ass'n, Inc., 452 U.S. 264, 291 (1981).  As the Court
noted, "[a]lthough such congressional enactments obviously
curtail or prohibit the States' prerogatives to make legislative
choices respecting subjects the States may consider important,
the Supremacy Clause permits no other result."  Id. at 290.
Thus, "[i]f a power is delegated to Congress in the Constitution,
the Tenth Amendment expressly disclaims any reservation of that
power to the States."  New York v. United States, 505 U.S. 144,
156.  Rather, "[a]s long as it is acting within the powers
granted it under the Constitution, Congress may impose its will
on the States [and] Congress may legislate in areas traditionally

regulated by the States."  <u>Gregory v. Ashcroft</u>, 501 U.S. 452, 460 (1991).

Because the application of the CSA to the Plaintiffs in this case would be a legitimate exercise of Congressional power under the Commerce Clause, the Tenth Amendment is not implicated, and Plaintiffs' claim must be dismissed.

## IV.  PLAINTIFFS' EQUAL PROTECTION CLAIMS MUST BE DISMISSED.

Plaintiffs' final theory asserts that the government's application of the CSA against them for their marijuana activities would treat them differently than several other various groups of people, thus resulting in a violation of their rights under the Equal Protection Clause.  The Equal Protection Clause, however, is implicated only if Plaintiffs can make a threshold showing that they were treated differently from others who were similarly situated to them.  <u>See</u> <u>Silveira v. Lockyer</u>, 312 F.3d 1052, 1088 (9th Cir. 2003) (finding that for equal protection review to be triggered an "action must treat similarly situated persons disparately.").

## A.   Plaintiffs are Not Similarly Situated to Members of the Native American Church.[7]

Plaintiffs' Equal Protection claim is doomed because they are not similarly situated to members of the Native American Church.  Most obviously, Plaintiffs' activities here involve marijuana while Native American Church members use peyote.[8]  In repeatedly rejecting Equal Protection claims from marijuana users based on the exemption for peyote, courts have emphasized the differences between the two drugs.  In <u>McBride v. Shawnee County, Kansas Court Servs.</u>, 71 F. Supp.2d 1098 (D. Kansas 1999), the court rejected Rastafarian Church members' assertion that their religious use of marijuana rendered them similarly situated to Native American Church members, noting:

> [T]he religious exemption in question is for peyote[,] not marijuana.  Although both drugs are classified as a schedule I controlled substance, peyote and marijuana are not the same drug, a point which is overlooked by petitioners.  There are over one hundred types of controlled substances listed in schedule I, including heroin, codeine methyl bromide, and morphine methyl

---

[7]  Presumably, the Plaintiffs' Equal Protection claim here is based on the fact that members of the Native American Church have a limited exemption to use the substance peyote for religious purposes.  <u>See</u> 42 U.S.C. § 1996a (2004); 21 C.F.R. §1307.31 (2004).

[8]  Put differently, Plaintiffs are treated no differently than Native American Church members with respect to marijuana because NAC members are not allowed to use marijuana either.

> bromide.  Not all drugs listed in schedule I pose
> the same threat to the individual or to society.

McBride, 71 F. Supp.2d at 1101 (internal citation omitted).

Courts have also recognized that the abuse rate and the amount of

illegal trafficking in marijuana far exceed those for peyote.

See Olsen v. Drug Enforcement Admin., 878 F.2d 1458, 1463 (D.C.

Cir. 1989); McBride, 71 F. Supp.2d at 1101.  In refusing to grant

members of the Ethiopian Zion Coptic Church an exemption for

their sacramental use of marijuana, the court in Olsen, quoted

from a DEA report which found:

> [T]he actual abuse and availability of marijuana in the
> United States is many times more pervasive . . . than
> that of peyote . . . .  The amount of peyote seized and
> analyzed by the DEA between 1980 and 1987 was 19.4
> pounds.  The amount of marijuana seized and analyzed by
> the DEA between 1980 and 1987 was 15,302,468.7 pounds.
> This overwhelming difference explains why an
> accommodation can be made for a religious organization
> which uses peyote in circumscribed ceremonies, and not
> for a religion which espouses continual use of
> marijuana.

Olsen, 878 F.2d at 1463; see also McBride, 71 F. Supp.2d at 1101-

02.

Another crucial difference between Plaintiffs' situation and

that of Native American peyote users lies in the unique

relationship between the federal government and Indian tribes,

which forms the basis for the peyote exemption.  Given the

history between the United States and Native Americans, a

"guardian-ward" relationship exists between them, which provides

Congress with plenary power to legislate on behalf of federally

- 29 -

recognized Indian tribes to promote their interests and preserve their culture.  See Morton v. Mancari, 417 U.S. 535, 551-52, 554-55 (1974) (concluding that "[o]n numerous occasions this Court specifically has upheld legislation that singles out Indians for particular and special treatment.").  Congress has made clear that the peyote exemption as it stands today is grounded in Congress's unique obligation to preserve the integrity of Native American tribal culture.  The Congressional findings preceding the 1994 statutory peyote exemption include the following language:

> The Congress finds and declares that-
> (1) for many Indian people, the traditional ceremonial use of the peyote cactus as a religious sacrament has for centuries been integral to a way of life, and significant in perpetuating Indian tribes and cultures;
> . . .
> (5) the lack of adequate and clear legal protection for the religious use of peyote by Indians may serve to stigmatize and marginalize Indian tribes and cultures, and increase the risk that they will be exposed to discriminatory treatment.

42 U.S.C. § 1996a(a).

Courts have rejected Equal Protection claims by other groups seeking religious exemptions from the marijuana laws on the same terms as the peyote exemption, finding that the peyote exemption is rooted in the special obligations of the United States toward the Native American Church.  In United States v. Rush, 738 F.2d 497 (1st Cir. 1984), for example, the First Circuit stated:

> [T]he peyote exemption is uniquely supported by the legislative history and congressional findings

- 30 -

> underlying the American Indian Religious Freedom Act,
> which declares a federal policy of "protect[ing] and
> preserv[ing] for American Indians their inherent right
> of freedom to believe, express and exercise the[ir]
> traditional religions . . ., including but not limited
> to access to sites, use and possession of sacred
> objects, and the freedom to worship through ceremonials
> and traditional rites." . . . In light of the *sui
> generis* legal status of American Indians, and the
> express policy of the American Indian Religious Freedom
> Act . . . we think the Ethiopian Zion Coptic Church
> cannot be deemed similarly situated to the Native
> American Church for equal protection purposes.

738 F.2d at 513 (internal citations omitted); see also McBride,

71 F. Supp.2d at 1102 (holding that the Native American Church

and the Rastafarian Church were not similarly situated because of

"the *sui generis* legal status of Native Americans" and because

"[u]nder the doctrine of trust responsibility, the federal

government is required to promote tribal self-government and

cultural integrity of Native Americans."); Olsen, 878 F.2d at

1464 (noting the special legal status of American Indians in

rejecting equal protection claim of Ethiopian Zion Coptic

Church).  Clearly, none of the Plaintiffs is "similarly situated"

to Native American peyote users because none of them share the

same history and trust relationship with the United States.

**B.  Plaintiffs are Not Similarly Situated to Members of the
UDV-USA Religion.**

Plaintiffs next assert a novel theory by claiming that their

right to equal protection of the law has been violated because

they have not received the same protection from federal

prosecution as members of the UDV-USA Church in the case O Centro

Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 342 F.3d 1170
(10th Cir. 2003).   In O Centro, a panel of the Tenth Circuit
Court of Appeals recently upheld the grant of a preliminary
injunction allowing members of the UDV-USA Church to use the
substance hoasca for religious purposes under RFRA.[9]  Putting
aside for the moment whether Plaintiffs' argument here is
properly couched as an Equal Protection claim,[10] the Plaintiffs'
claim nevertheless fails because none of the Plaintiffs in this
case is similarly situated to members of the UDV-USA Church.

To reiterate, Plaintiffs' activities here involve marijuana
while members of the UDV-USA religion use a tea-like substance

---

[9] The decision in O Centro is currently pending before the
en banc Tenth Circuit, where two panel members have already
indicated that they believe the district court's ruling to be "in
considerable tension with" both the law and the facts.  See O
Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 314
F.3d 463, 466 (10th Cir. 2002) (granting stay of preliminary
injunction pending appeal).  Accordingly, the continued authority
of O Centro is questionnable.

[10] In essence, Plaintiffs are simply asserting that O Centro
is on point and  requesting that this court employ stare decisis
in determining their separate claim for relief under their RFRA
claim, but appear to be arguing that if that decision is not
followed they would be denied equal protection of the law as
compared to the O Centro plaintiffs.  Under the Plaintiffs'
logic, every assertion that prior case law controlled an issue
could also be framed as a potential equal protection violation.
Courts have rejected similar equal protection theories out of
hand.  See Hawkins v. Agricultural Mktg. Serv., Dep't of
Agriculture, 10 F.3d 1125, 1131-32 (5th Cir. 1993) (finding that
circuit splits regarding the meaning of a statute do not deny the
equal protection of the laws to the person subjected to the more
burdensome interpretation); United States v. Palacio, 4 F.3d 150,
154 (2d Cir. 1993) (same).

called hoasca.[11]  As explained earlier in Section I. B., courts
have unanimously found that the government does have a compelling
interest in prohibiting the use of marijuana even for religious
purposes.  See, e.g., United States v. Israel, 317 F.3d 768, 771-
72 (7th Cir. 2003).  The O Centro court itself recognized that
case law clearly establishes that the government has a compelling
interest in outlawing even the sincere religious use of
marijuana, even though it found such an interest lacking with
respect to UDV members' sacramental use of hoasca.  O Centro, 342
F.3d at 1185.

Additionally, the sincerity of the UDV members' beliefs and
the legitimacy of their religion were not at issue in that case
since the government did not raise those issues for the limited
purpose of determining whether a preliminary injunction should
issue.  Here, Defendants do challenge the legitimacy of
Plaintiffs' religion.  As discussed in greater detail above,
Plaintiffs are not adherents to a genuine religion, but rather
are marijuana smokers seeking to subvert the law under the cloak
of an ad hoc set of beliefs and rituals purported to constitute a
religion.  Accordingly, Plaintiffs are not similarly situated to
the members of the UDV-USA Church and their equal protection
claim must be dismissed.

---

[11] Conversely, the Plaintiffs are treated no differently than
UDV-USA church members with respect to marijuana because UDV
members are not allowed to use marijuana either.

   **C.   Plaintiffs are Not Similarly Situated to the Plaintiffs
        in Raich v. Ashcroft.**

   Plaintiffs next repeat their novel Equal Protection theory

by claiming that their right to equal protection of the law also

has been violated because they have not received the same relief

as the plaintiffs in the case Raich v. Ashcroft, 352 F.3d 1222

(9th Cir. 2003), discussed above.  As mentioned, Plaintiffs Equal

Protection theory here is misguided.[12]    The claim nonetheless

fails under Equal Protection analysis because, as was discussed

in Section III. A. above addressing Plaintiffs' separate Tenth

Amendment/Commerce Clause claim, the Raich case is

distinguishable from the present situation, or in equal

protection vernacular, Plaintiffs are not similarly situated to

the plaintiffs in the Raich case.  Unlike the Raich plaintiffs,

the Plaintiffs here cultivate, use, and *distribute* marijuana for

allegedly *religious* purposes.  Accordingly, Plaintiffs' "Equal

Protection" claim based on Raich fails for the same reasons their

Tenth Amendment/Commerce Clause claim fails, and those arguments

are incorporated herein.

_____

   [12] Just like they did with the O Centro case above,
Plaintiffs are, in effect, simply asserting that Raich is
controlling and requesting that this court employ *stare decisis*
in determining their separate claim for relief under their Tenth
Amendment/Commerce Clause theory, but present this claim as a
potential equal protection violation.  As indicated above in
footnote 10, courts have flatly rejected such equal protection
claims.  See Hawkins, 10 F.3d 1125, 1131-32 (5th Cir. 1993);
Palacio, 4 F.3d 150, 154 (2d Cir. 1993).

**D.    Plaintiffs are Not Similarly Situated to the Seven Remaining Participants in the Government's Discontinued Compassionate Use Program.**

Plaintiffs' final Equal Protection claim is based on their assertion that they are being treated differently than the seven remaining living participants who continue to receive marijuana from the federal government under the now discontinued compassionate use research program.[13]  This claim also fails as a matter of law because Plaintiffs are not similarly situated to the seven remaining participants.  Most obviously, Plaintiffs are not and never were participants in the compassionate use program.  In Kuromiya v. United States, 78 F. Supp.2d 367 (E.D. Pa. 1999), the court rejected an identical equal protection claim from a group of plaintiffs who wished to receive marijuana and complained that they were being treated differently than the remaining participants in the program.  The court noted that "the plaintiffs are not similarly situated to those already in the program, which constitutes an independent reason to reject

_____

[13] The compassionate use research program began in 1978 to settle a civil lawsuit and provided marijuana to a limited number of participants with glaucoma and other severe illnesses. Kuromiya v. United States, 78 F. Supp.2d 367, 368 (E.D. Pa. 1999).  The federal government terminated the program in 1992 but decided to continue to provide marijuana only to the 13 people who were participating in the research program at that time for the remainder of their lives or until they left the program voluntarily.  Id. at 370.  There are currently seven remaining participants in the program.

plaintiffs' equal protection claim." Id. at 372 n. 9.[14]

Even if the court were to find the Plaintiffs similarly situated to the seven remaining participants in the compassionate use program, their equal protection claim continues to fail as a matter of law.  In Kuromiya, the court also determined that the exclusion of non-participants in the compassionate use program from being eligible to receive marijuana did not burden a fundamental right or target a suspect class and therefore was subject only to rationality review.  Id. at 371.  The court concluded that the government's decision to terminate the program and to allow only current participants to continue to receive marijuana was rationally related to a legitimate government interest.  Id. at 371-72.[15]   The Plaintiffs' equal protection claim here is identical to the claim rejected in Kuromiya and must be dismissed.

———————————

[14] Additionally, five of the six plaintiffs in this case are not seeking to use marijuana for medical purposes as patients at all, but rather seek a religious exemption and/or permission to cultivate, use, and distribute marijuana, which again differentiates them from the seven compassionate use program participants.

[15] The court explained that the government rationally decided to end the program because it was increasingly skeptical about the safety and effectiveness of marijuana as a medical treatment, and its decision to allow current participants to continue to receive marijuana was rationally made because those individuals had relied on the government-supplied marijuana for many years and the government did not want to abruptly end their supply. Id. at 372.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims fail as a matter of law and do not merit declaratory or injunctive relief. Accordingly, Defendants' Motion to Dismiss should be granted, and this action should be dismissed with prejudice.

DATED: May 24, 2004                    Respectfully submitted,

                                       PETER D. KEISLER
                                       Assistant Attorney General

                                       EDWARD H. KUBO, JR.
                                       United States Attorney

                                       VINCENT M. GARVEY
                                       Deputy Branch Director


                                       EDWARD H. WHITE
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division
                                       Federal Programs Branch
                                       20 Massachusetts Avenue N.W.
                                       Rm. 7107
                                       Washington, D.C.  20530
                                       Tel.: (202) 514-5108
                                       Fax: (202) 616-8470
                                       Email: ned.white@usdoj.gov

                                       Attorneys for the Defendants.



# The Hawai'i Cannabis Ministry
## "WE USE CANNABIS RELIGIOUSLY AND YOU CAN, TOO"

**Jesus**
**Current Events**
**Sanctuary Kit**
**Testimonials**
**Donate Now**
**Ministry News**
**Ministry Email**
**Ministry Links**
**Ras Tafari**
**Hilo Webcam**

THC Ministry Message Board - New secure system, post here

Roger's Corner old bulletin board system, read-only

"The Living Torah" by Rabbi Aryeh Kaplan states that cannabis sacrament is in the Holy Anointing Oil

Proposed New Law - House Bill - HB "Passover"

Calamus for Optimum Health (from "The Yoga of Herbs" by Dr.

**The Cannabis Sanctuary Kit**

**Online Now**
*Grow and use Cannabis for your Religious Sacrament in private - at home.*

Bible is the Word of God & is Public Law - U.S. Public Law 97-280

Lawyer Michael A. Glenn's Endorsement & Disclaimer

Lawyer Steven Strauss' Endorsement & Disclaimer

The Religious Freedom Restoration Act of 1993 (RFRA)

Religious Land Use and Institutionalized Persons Act of 2000

Activist Pressure Led To Hawaii County Council Resolution 46-01

Hawaii Police Department





Religious rights and freedoms are granted by the Creator to all of us and protected by law in every country on earth.

If you would like to find out how to claim your inheritance to legal cannabis sacrament, please keep reading.

It is my pleasure to show you how to build your own defense to prosecution starting today and lasting for your entire lifetime.

Find out how to become a 'practitioner' of cannabis sacrament and how to establish your religious defense.

---

Aloha and welcome to
The Hawai'i Cannabis (THC) Ministry.

**Do you use cannabis religiously?**

**Would you like to use cannabis religiously?**

**Would you like to be free of legal problems associated with cannabis for the rest of your life?**



**Vasant Ladd &
Dr. David
Frawley, (1980s
Edition)**

**Roger Christie
announces
candidacy for
Hawaii County
Mayor**

**Meth epidemic
study conclusion**

**Rules and
Regulations
Governing
Investigations
Involving The
Medical and
Religious Use
Of Marijuana**

**Can you pass
the Andrews
Test?**

**Would you like identification that will help to protect you
from arrest, prosecution and conviction of cannabis
charges?**

**If you answered yes to any of these questions, then
the THC-Ministry might be for you.**

**My name is Roger Christie . I received my license to
perform marriages in the State of Hawaii on June 19,
2000 as a 'Cannabis Sacrament' Minister. To the best of
my ability my work includes providing a sincere,
legitimate, mandatory and private basis for those of us
who enjoy cannabis.**



**I have developed the 'Cannabis Sanctuary Kit' to help
defend sincere people who use Cannabis religiously.
Check it out!**



"Roger Christie is the most amazing cannabis activist out there"
~ Jason King, author of The Cannabible

We have had all positive experiences with those who have used our kit.  Please
tell us your testimony.  We will post your experiences, good or bad, on the
Testimonials page.  If you have been a member and have been prosecuted for
possession or cultivation of cannabis, please contact us immediately.  As far as
we know we have a perfect track record and we want to keep it that way, for
your benefit and ours.



Article in Heads Magazine explains The Hawai'i Cannabis (THC) Ministry.

"God, that's great! - from marijuana victim to cannabis victory"

Cannabis Culture article backs
up Testimonial Confession.

"Hawaii's Hemp Heroes"



**The THC Ministry began in September of 2000 and has provided cannabis Sanctuary paperwork to thousands of people who use it successfully.**
**The ministry documents are designed to work in all 50 of the United States and to help protect the practice of cannabis spirituality everywhere.  If this feels right to you and you are over 18 years of age, come join us for free today,**
**then join our forum at**
**THC-Ministry.Net**
**(Amsterdam THC Ministry)**
**and then join the**
**THC Ministry Newsletter.**

RogerChristie—SanctuaryKit—MinistryNews—MediaUpdate—MinistryEmail—Ministry Links—MinistryHome



# The Hawai'i Cannabis Ministry
## "WE USE CANNABIS RELIGIOUSLY AND YOU CAN, TOO"

**Get the
Sanctuary Kit,
Online Now!**
*Grow and use
Cannabis
for your
Sacrament...!*

- Jesus
- Current Events
- Roger Christie
- Sanctuary Kit
- Testimonials
- Donate Now
- Ministry News
- Ministry Email
- Ministry Links
- Ras Tafari
- Hilo Webcam

# SANCTUARY
### A PLACE OF REFUGE
### FOR THE RELIGIOUS PRACTICE OF CANNABIS SACRAMENT

Aloha. Thank you for honoring the privacy of our home and garden for religious and spiritual freedom, as we honor yours. The cultivation and use of cannabis sacrament is a fundamental right provided by God and preserved by law. Our home and garden is our place of refuge, one of the highest values of civilization.

Cultivation and use of cannabis sacrament is MANDATED by our religion for spiritual receptivity and unity, for healing of body, mind and spirit, and for our precious connection to God and nature. We give thanks for our many blessings. All is well.



The Hawai'i Cannabis (THC) Ministry
"We use cannabis religiously and you, too."

Rev. Roger Christie
Hawaii State License No. 00-313
www.thc-ministry.org (808) 961-0488

*As an officer of the law you have been compelling State or Federal interest in prohibiting the free exercise of our sincere, legitimate and private religious practice. Thank you for protecting our First Amendment Constitutional rights and for honoring your sacred oath of office to defend them.*

You can receive the complete Cannabis Sanctuary Kit
via our secure online system for a suggested donation of
$250.00.
The holy anointing oil is included free of charge.
If you would prefer to receive your cannabis sanctuary kit
without the anointing oil, please specify this in the
shipping instructions.





The Cannabis Sanctuary Kit includes powerful legal precedents,

EXHIBIT "2"

successful cases and a history of Roger's religious credentials
and successful court actions.

I mail you the practitioner membership I.D. cards with self-laminators for
your wallet, 2 Sanctuary signs to secure your home and garden, THC
Ministry affidavit, Sacrament/Plant tags for your stash bag and plants, and
all the documentation necessary for you to build the foundation for your
own religious freedom. The kit has approximately 30 pages of well-
researched materials with research done on the state, national and
international level. It comes in a sturdy 3-ring binder.

### Holy Anointing Oil -

Contains the ancient formula of olive oil, liquid myrrh,
cinnamon leaf oil, cinnamon bark oil and cannabis (to be used
externally only) as described in Exodus 30:23. It is prayerfully
made from the best ingredients to be found anywhere on earth.

YOU MUST BE AT LEAST 18YRS OF AGE and we recommend that you be
an ordained minister with the Universal Life Church at www.ulc.org to finalize
your defense.

Receiving the kit demonstrates that you are a practitioner of
The Hawai'i Cannabis (THC) Ministry. Being a member of
The Hawai'i Cannabis (THC) Ministry allows you to cultivate and use cannabis
for your holy sacrament.

Click on the PayPal Donate Button to get the entire kit now.

*Our Kit Really Works!!! - Read the Testimonials*

"The police and Judge are respecting my religious
exemption and are treating me real different than
they would if I was a regular guy with marijuana."
"My lawyer told me that if we didn't have Roger's help,
we wouldn't have a leg to stand on.
*-Arizona man arrested with a pound of marijuana*

There have been ZERO convictions that we know of...

### Suggested uses of the "Cannabis Sanctuary Kit"

## 1. To protect your sacred plants and sacrament:

One of the 'plant tags' can be put in your container of
Sacrament. Other tags can be placed on the stems of cannabis

plants in your private garden at home. These tags work in a similar fashion as a prescription label on medicines.

## 2. To protect your home and garden:

One Sanctuary sign can be framed and
hung inside your front door or kept in private.
Another Sanctuary sign can be framed and hung
inside your greenhouse.
These Sanctuary Signs designate your home and garden
as a 'Place of Refuge' for the practice of
cannabis spirituality and are legal notification
if law enforcement ever visits.

## 3. To protect your body:

The THC Ministry identification card is to be signed,
laminated and kept in your wallet or purse.
It will protect your use of cannabis sacrament in any of
the 50 United States and elsewhere throughout the world.
This is your "Stay out of jail free" card.

## 4. Court-admissible evidence:

The Religious Rights Affidavit is located on the
back side of the Sanctuary Sign and gives you,
the practitioner, legal definition of your
individual religious rights. Please read and sign it
and make a copy for your permanent records.

We give thanks and praise for our religious freedom
and for all our many blessings. Mahalo ke Akua.

**P.O. Box 202  Hilo, Kingdom of Hawai'i 96721
(808) 961-0488**

RogerChristie—SanctuaryKit—MinistryNews—MediaUpdate—MinistryEmail—Ministry
Links—MinistryHome



**Order the
Sanctuary Kit,
Online Now!**
*Grow and use
Cannabis
for your
Sacrament...!*

**PayPal**
BUY NOW

Jesus
Current Events
Roger Christie
Sanctuary Kit
Testimonials
Donate Now
Ministry News
Media Update
Ministry Email
Ministry Links
Ras Tafari
Hilo Webcam
Roger's Corner

# The Hawai'i Cannabis Ministry
## "WE USE CANNABIS RELIGIOUSLY AND YOU CAN, TOO"

### Step 1.
Join the THC Ministry for free below.

| | Country |
| | Full Name |
| | Email Address |
| | Mailing Address |
| | City |
| | State |
| | Zip Code |
| | Phone Number |
| | Age |
| | Comments |

Join Now!

By clicking "Join Now" you are testifying that you are
a sincere practitioner of the cultivation and use of cannabis sacrament.

As of this time and date you are now officially registered with
The Hawai'i Cannabis (THC) Ministry.

Take your first long deep breath of religious freedom...

## Welcome!

### Step 2.
Become ordained for free at the
**Universal Life Church.**

ULC is a multi-denominational church that has fought for
and won religious freedom for decades.

Ordainment is part of the process of building
your own religious defense to prosecution.



EXHIBIT 3

## Coming soon: Ordainment with the THC Ministry - the first global cannabis ministry.

The privacy of our members is important to us. thc-ministry.org does not collect any personally identifying information about users, except that which is knowingly and specifically supplied to us by the user. We will hold any information you supply us in private. Upon your request we will testify that you are a member of the ministry for your legal protection purposes.

### Step 3.
Get your Cannabis Sanctuary Kit by
**clicking here**

**OR**

make a free will donation (tithe) to the ministry by
**clicking here**.

### Step 4.
Start a THC Ministry in your area.

### E-mail roger@thc-ministry.org for details.

*Our Kit Really Works!!! - Read the Testimonials*

**"The police and Judge are respecting my religious exemption and are treating me real different than they would if I was a regular guy with marijuana."**

**"My lawyer told me that if we didn't have Roger's help, we wouldn't have a leg to stand on.**
*-Arizona man arrested with a pound of marijuana*

# Hallelujah!

## P.O. Box 202  Hilo, Kingdom of Hawai'i 96721
## (808) 961-0488

RogerChristie—SanctuaryKit—MinistryNews—MediaUpdate—MinistryEmail—Ministry Links—MinistryHome

The Hawai'i Cannabis (THC) Ministry I.D. Cards with Links to local THC Ministry websites          Page 1 of 1





<u>CERTIFICATION RE: WORD COUNT</u>

Pursuant to Local Rule 7.5(e), I hereby certify that

Defendants' Memorandum in Support of Defendants' Motion to

Dismiss has a word count of 8,489 words.

I certify under penalty of perjury that the foregoing is

true and correct.

Executed on May 24, 2004.


EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By: _____
EDWARD H. WHITE
Trial Attorney
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was transmitted via United States mail on May 24, 2004, to the following:

Michael A. Glenn, Esq.
1088 Bishop Street, Suite 703
Honolulu, Hawaii 96813